### REAMS v. SPANN.

1. The words of a will were: "The whole of my real estate I wish to be divided between my six children first above named. * * * Should any of my children die leaving no child or children, the property herein given I wish divided among my surviving children." *Held*, that the word "surviving" referred to the time of testatrix's death, that the estate given vested absolutely at that date, and that the shares of two of the children allotted to them after their mother's death passed, upon their death without issue and intestate, to their heirs at law.
2. A question of adverse possession not considered, it not having been passed upon in the court below.

Before KERSHAW, J., Sumter, October, 1884.

This was an action for partition. The plaintiffs were grand-children of Elizabeth Spann, the testatrix, and the defendants were two grandchildren of the said Elizabeth, and two others, named McRae, who were in possession of the land in suit. The plaintiffs claimed that they, together with the two defendants first named, were entitled to two tracts of land, which were allotted to Martha E. Spann and Sarah A. Spann under the will of Elizabeth Spann, the said Martha and Sarah having died intestate and without issue. The McRaes put in a general denial, and also claimed by adverse possession.

The Circuit Judge sustained the claim of the plaintiffs, and held that upon the death of Martha and Sarah their shares passed to their surviving brothers and sisters, the parents of the plaintiffs and of the two defendants first named. In support of this decision, his honor quoted at length and cited *Matthis* v. *Hammond*, 6 *Rich. Eq.*, 399; *Mendenhall* v. *Mower*, 16 *S. C.*, 303; 2 *Jarm. Wills*, 635, 640, 650; *Barlow* v. *Salter*, 17 *Ves.*, 482; *Presley* v. *Davis*, 7 *Rich. Eq.*, 108; *Pow. Dev.*, 724; *Hicks* v. *Pegues*, 4 *Rich. Eq.*, 415; *Evans* v. *Godbold*, 6 *Id.*, 26.

The defendants, Henry and J. J. McRae, appealed, alleging error in the construction put upon the will of Elizabeth Spann. The appeal was argued December 1, 1885. On May 8, 1886, this court ordered a reargument upon the following questions: I. Whether, under the will of Elizabeth, a fee absolute was devised

to her children, the children of a predeceased child representing their parent. II. Whether it was a fee defeasible, with limitation over; and if the latter, whether the limitation over was to the children who survived the testatrix, or to those who survived the first taker. The reargument was had upon these questions on January 17, 1887.

*Messrs. Moises & Lee,* for appellants.

*Mr. Jos. H. Earle,* attorney general, contra.

April 21, 1887. The opinion of the court was delivered by

Mr. Justice McIver. Elizabeth Spann, having first duly made and executed her last will and testament, departed this life in 1840, leaving five children her surviving. A copy of her will is not set out in the record, and all that we know of its provisions is derived from an extract from it, appearing in the decree of the Circuit Judge, as follows: "The whole of my real estate I wish to be divided between my six children first above named. * * * Should any of my children die leaving no child or children, the property herein given I wish divided among my surviving children." It appears that one of the six children thus named, to wit, Mary R., died in the life-time of the testatrix, leaving children, and in 1841 partition was made, by proceedings in the Court of Ordinary, of the said real estate amongst the five surviving children of testatrix and the children of the said Mary R., each of the five children taking one-sixth, and the children of Mary R. the remaining sixth. Two of the five children, viz., Martha E. Spann and Sarah A. Spann, died, the former in 1879 and the latter a year or two before, intestate, childless, and unmarried, and this controversy is as to the shares of said real estate, which, in said partition, had been allotted to them. The plaintiffs claim that they, together with the two first named defendants, are entitled, as the surviving heirs of the testatrix, to the said land, and they ask partition of the same, according to their several interests as set forth in the complaint. The other two defendants—the McRaes—the appellants herein, who are in possession of the land, resist this claim and assert their right to hold the land by possession.

The Circuit Judge, who heard the whole case without a jury, seems to have considered only the question of the proper construction of the will, without passing upon the question as to the adverse possession of appellants; for he says in his decree: "My notes of evidence do not show how long the McRaes were in possession of the land, but in the argument it appeared that it was assumed that the possession had been such that it would defeat the claim of the plaintiffs if the construction of the devise contended for by the defendants' counsel should prevail; and otherwise it would not, there being continuous minorities that would defeat the plea of the statute." It appears, however, from the "Case," as prepared for argument here, that this was a misconception on the part of his honor; for it is there stated that, "There was no testimony offered on the part of the defendants, Henry and J. J. McRae, and there was no proof whatever of the title claimed by them, or of the length of time they had been in possession of the land. The plaintiffs made no admissions or concessions at the trial as to any claim or right of the said Henry McRae and J. J. McRae to the land in question."

It is quite manifest, therefore, that there was some misunderstanding in reference to this matter, and hence we would not feel willing to rest our decision either upon the one or the other view of it, but will proceed to consider the only question passed upon by the Circuit Judge, and the only question raised by this appeal. That question is as to the proper construction of the will. The appellants contend that an absolute estate vested in Sarah A. and Martha E. Spann, the first takers, without any limitation over, in the events which have happened, as the words, "surviving children," meant children who were alive at the death of the testatrix; while, on the other hand, it is contended that the word "surviving" must be referred to the death of the first taker, and' as there was no surviving child of the testatrix at the death of Martha E., who could take under the limitation over, the property reverted to the estate of the testatrix and became divisible amongst her survivors. Again, it is contended, and this is the view adopted by the Circuit Judge, that the limitation over was not void for remoteness, and that the word "surviving" must be construed as equivalent to the word "other," and hence upon the

death of any child of the testatrix, leaving no children, the share of such deceased child went over to the other children, and was transmissible to their heirs, children, and grandchildren.

The real inquiry is, what was the intention of the testatrix? and this must be ascertained from the language which she has used, read in the light of the surrounding circumstances, where the meaning of the language is obscure or doubtful, guided by such rules of law as experience has shown to be useful in ascertaining the intention. The language used by the testatrix in this case is as follows: "The whole of my real estate I wish to be divided between my six children first above named. * * * Should any of my children die leaving no child or children, the property herein given I wish divided among my surviving children." Now, the primary purpose indicated by this language, unquestionably, is that a certain thing—"the whole of my real estate"—is to be divided among certain persons designated by name—"my six children first above named"—and as this language is found in a will, which is written for the purpose of directing what disposition is to be made of the person's property at the death of such person, it is equally clear that the testator intended that this division should be made at her death, inasmuch as she has not indicated any other period at which it should be made. Having thus expressed her primary purpose, it would very naturally occur to her that this purpose, which she then had in her mind, might be defeated by the death of some one or more of the persons whom she had designated as entitled to share in such division before the period arrived when it was to be made, and hence the transition to a provision for such contingency, expressed in this most appropriate language, "Should any of my children die leaving no child or children, the property herein given I wish divided among my surviving children"—meaning that my first wish is, that at my death all my real estate shall be equally divided among my six children, naming them; but as one or more of the six may die leaving no child before the time for such division arrives, I, in that event, wish the said property to be divided among those of the six who may then be living.

Observe the language which she uses; after making provision for a division of the whole of her real estate among the six chil-

dren who were then living, she says : *"Should* any of my children die leaving no child or children, *the property herein given* I wish divided among my surviving children." Now, what was "the property herein given" ? for it is that which was to be divided, upon the contingency mentioned, among the surviving children. Clearly it was "the whole of my real estate," for that is the only property mentioned, and certainly is "the property herein given." She does not say that upon the death of any of her children without child or children, *the share of the child so dying* shall be divided among the survivors, which is the language usually employed to express an intention to limit over such share; but, on the contrary, after providing for the division of certain specified property among certain designated persons, she goes on to provide that in the event of the death of any of such persons without children, the same property (for that is clearly the meaning of the words, "the property herein given") shall be divided amongst the survivors of such persons, and as there could be but one division of that property, she must have meant by the words, "my surviving children," those who were living at the time of her death. According to our construction of the language used by the testatrix, her intention was simply to indicate who were the persons entitled to share in the division of her real estate in the event that any of her six named children should die leaving no children before the period at which such division was to take place arrived, and that it was not her intention to limit over the shares of those who should participate in such division ; and, therefore, the children of the testatrix, who were living at the time of her death, took absolute estates in their respective shares of the real estate of the testatrix.

The rights of the children of Mary R., who predeceased the testatrix, to share in the division of the real estate of the testatrix, seems to have been conceded in the proceedings for partition before the ordinary, and that matter not being in controversy now, need not be considered. It seems to us, therefore, that the Circuit Judge erred in his construction of the will of the testatrix, and therefore the case must go back for a new trial.

It is true that respondents contend that, under any construction of the will, the present appellants have no standing in court.

For even assuming that Sarah A. Spann and Martha E. Spann took absolute estates in their respective shares of the land allotted to them in the proceedings before the ordinary, the land in controversy would, upon the death of these ladies leaving no issue, descend to their heirs at law, who are the plaintiffs herein, and these appellants having failed to show that they have acquired any interest therein, their appeal should be dismissed. But, as we have said, there must have been some misunderstanding in the court below in regard to this matter, and we do not propose to consider the case in that aspect, or decide anything in reference to it. The judgment appealed from rested solely upon the construction of the will, and no other question was considered or decided, and that construction being erroneous, must be set aside.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for a new trial.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN. I concur that this case should go back for a new trial, but I prefer to reserve judgment as to the construction of Mrs. Spann's will.