GUSTAV G. DRAGER, Appellee, *vs.* WILLIAM G. McINTOSH, Appellant.

*Opinion filed April 24, 1925.*

1. WILLS—*when devise over in case of death of devisee means death at any time.* Where a testator makes a devise without preceding it with a gift of a life estate and provides that in case of the death of the devisee the property shall go to another, the devise over must be construed as referring only to death in the testator's lifetime; but where the devise over is coupled with contingent circumstances, such as death with or without children, the testator will be considered as having referred to death at any time, either before or after his own.

2. SAME—*when devise to children gives only life estates with contingent remainders—conveyance.* Where a testator devises all his property to his children, (naming them,) but provides that in case of the death of any child leaving children his share shall go to his children equally, and in case of death of any child without children surviving the share of such child shall go to the remainder of the testator's children, the estate of each child of the testator must terminate with his life, and is therefore a life estate with contingent remainders, as provided in the devises over, but a conveyance in which all the children join prior to the act of 1921 will destroy said remainders and convey a fee simple title.

3. SAME—*estate in fee may be limited by condition in any part of will.* An estate in fee simple may be granted subject to a condition that it shall terminate on the happening of some future event, and it is wholly immaterial in what part of the will such condition is expressed, provided the language of the clause creating the limitation is as clear as that of the clause creating the estate.

4. SAME—*a later repugnant clause will prevail.* Every clause and provision of a will should, if possible, be given effect according to the testator's intention, but where a later clause in a will is so repugnant to an earlier that reconciliation is impossible, the later clause is construed as modifying or abrogating the earlier.

5. SAME—*whole will must be considered to determine testator's intention.* In interpreting a particular provision of a will the law authorizes the consideration of the whole will, and the intention of the testator will be determined from a consideration of all the language he has used, in whatever portion of the will it may be found.

6. SAME—*section 13 of Conveyances act does not preclude consideration of entire will.* Section 13 of the Conveyances act, providing, in effect, as to wills, that every devise of an interest in

lands shall be considered a devise of a fee simple estate of inheritance unless otherwise limited by express words or appearing to be devised by operation of law, is not intended to establish a rule of construction preventing the consideration of all the language of the will, as estates of inheritance could be devised prior to said act by any words indicating such intention.

7. SAME—*devise of real estate is construed according to law where land is situated.* A will devising real estate, wherever made and in whatever language written, is construed according to the law of the State or country in which the property is situated, and where a testator by a single will devises lands lying in two or more States, the courts of each such States will construe the will as to the lands situated in them, respectively, in the same manner as if they had been devised by separate wills.

8. SAME—*act of 1921 as to destruction of future interests is not retroactive.* The act of 1921, (Laws of 1921, p. 470,) to prevent the destruction of future interests, is not retroactive and does not apply to cases where conveyances which have the effect of destroying such interests were executed before the act took effect.

FARMER, J., specially concurring.

APPEAL from the Circuit Court of Livingston county; the Hon. STEVENS R. BAKER, Judge, presiding.

H. G. GREENEBAUM, and CYRIL A. BURNS, for appellant.

KENNEDY & KENNEDY, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant and appellee entered into a contract for the exchange of real estate in Livingston county, each to give to the other an abstract showing a "good merchantable and sufficient" title to the property he agreed to convey. Abstracts of title were exchanged and the appellee on the date fixed for that purpose offered to perform the contract, but the appellant refused to accept the offer because he had been advised by his attorney that the title offered was not good. The appellant concedes that the appellee has fully complied with the contract if his title is good, and that is the only question presented for decision. The appellee filed his bill in the circuit court of Livingston county for the

specific performance of the contract. The appellant demurred, the demurrer was overruled and a decree for specific performance was rendered, from which the defendant appealed.

The premises in question were formerly owned by John Crabb, a resident of Jasper county, Indiana, where he died on September 1, 1916, having on July 17, 1909, executed his will, which was probated in the circuit court of Jasper county, Indiana, and on February 25, 1918, was probated in Livingston county, Illinois. His heirs were his seven adult children. The will in three items made a complete disposition of the testator's property, as follows:

"Item 1st. It is my will that all my just debts and funeral expenses be all first fully paid.

"Item 2nd. I give, devise and bequeath all the remainder of my property real, personal and mixed of every kind and description and wherever situated, to my seven children, viz: Ada May Beeks (nee Crabb), Charles Albert Crabb, Elizabeth Ann Phillips (nee Crabb), Walter James Crabb, Dora Celia Cornwell (nee Crabb), Ethel Janet Pampel (nee Crabb), and Zephyr Grace Crabb, they to have the same in fee simple absolute, in equal proportion, share and share alike.

"Item 3rd. In case of the death of any of my said children leaving heirs of their body alive, then the interest of such deceased child shall go to his or her child or children in equal proportions, but in case any of my said children shall die leaving no child or children or descendants of deceased child or children, then the interest of such deceased child shall go to the remainder of my said children or to the descendants of such as may be dead in the proportion herein expressed."

It appears from the allegations of the bill that for many years prior to 1909, continuously to his death, John Crabb resided in Jasper county, in the State of Indiana. At the time of making his will, and for some time prior and until

his death, he was a widower and his heirs were his seven adult children. At the time of making his will all except the youngest, a daughter about eighteen years old, who was keeping house for her father, were married and had homes of their own. All of them but one, the oldest, had children. At the time of the testator's death all his children were living and married. All had children but the youngest, who now has two, born since her father's death, and the oldest, who died after her father's death, never having had a child. The testator's second child, a son, died in 1924, leaving three children. The testator at the time of making his will was about sixty years old, strong physically and mentally, and was, and always had been, a man of good health, happy and genial disposition, on friendly and intimate terms with his children, visiting them frequently at their homes, always manifesting great interest in them and their affairs and fond of each and all of them. He had lived in Jasper county all his life, owned various tracts of land in that State, and had at various times in his life bought and sold land in that State. At that time, in addition to being the owner of the tracts of land in Indiana, he also owned the land in question in Livingston county, Illinois. At the time of the execution of his will four of his children resided in Jasper county, all having good business qualifications and settled residence in that county, competent to act as executors and in every way, and he had confidence in their business ability, but he did not nominate any of his children as executors but named one of his sons-in-law and a collateral relative. The bill represents that the will vested the title to the lands in fee simple in the testator's children; that afterward, on February 2, 1918, they conveyed the land by warranty deed to the appellee; that item 3 of the will was inserted for the sole purpose of providing against lapses; that there is no statute in the State of Indiana providing for children or grandchildren in case a devisee should die in the lifetime of the

testator, and it is the usual and common practice in that State to place in wills provisions of the character in item 3 of this will to guard against lapses, and the purported devises in that item were simply substitutional devises for the purpose of covering conditions which might arise in case any of the children of the testator should die before his death; that his intention, as shown by his whole will, was to give an absolute fee simple estate in his real estate to his children; that he did give them such estate in item 2 of his will; that item 3 did not in any way affect such estates, and that the deaths contemplated in item 3 were deaths which might occur in the lifetime of the testator.

The language of item 2 of the will is clearly sufficient to devise the land to the testator's children as tenants in common, in fee simple. The question for us to determine is, How is this devise affected by the language of item 3? The appellee's answer is, not at all; that the reference in item 3 to the death of any of the testator's children relates only to death in the lifetime of the testator, and the purpose of the clause is only to substitute as devisee for any child so dying the persons mentioned in item 3. This is directly contrary to the well established rule of construction which has been announced in numerous cases in which this court has construed similar clauses in wills, that when a devise is made to a person in fee and in case of his death to another in fee the absurdity of treating as contingent or uncertain the one event which is sure to occur to all living requires an interpretation of the devise over as referring only to death in the testator's lifetime, but when the death of the first taker is coupled with other circumstances which may occur or may never occur, as death under age or without children, the devise over takes effect, unless controlled by other provisions of the will, according to the ordinary and literal meaning of the words, upon death under the circumstances indicated, whether before or after the death of the testator. *Summers* v. *Smith,* 127 Ill. 645; *Smith* v.

*Kimbell,* 153 id. 368; *Bradsby* v. *Wallace,* 202 id. 239; *Fifer* v. *Allen,* 228 id. 507; *Ahlfield* v. *Curtis,* 229 id. 139; *Carpenter* v. *Sangamon Loan and Trust Co.* id. 486; *Britton* v. *Thornton,* 112 U. S. 526; *O'Mahoney* v. *Burdette,* L. R. 7 H. L. 388.

The cases of *Arnold* v. *Alden,* 173 Ill. 229, *Fishback* v. *Joesting,* 183 id. 463, and *Kohtz* v. *Eldred,* 208 id. 60, have sometimes been regarded as inconsistent with the above rule, but the first two of these cases were discussed and distinguished in *Bradsby* v. *Wallace, supra,* and the third in *Carpenter* v. *Sangamon Loan and Trust Co. supra.* In *Fifer* v. *Allen, supra,* there was a full consideration of the question with reference to the various decisions, and the rule was again announced as it had been previously established and consistently observed. In accordance with this rule, the death of any of the testator's children mentioned in item 3 of the will must refer to death at any time, whether before or after that of the testator. Since the death of any child must be leaving heirs of his body alive or leaving no child or descendants of a deceased child, the language used exhausted all possible contingencies. The estate of each child of the testator must terminate with his life and is therefore a life estate. *King* v. *King,* 215 Ill. 100; *Johnson* v. *Askey,* 190 id. 58; *Thomas* v. *Miller,* 161 id. 60; *Healy* v. *Eastlake,* 152 id. 424; *Furnish* v. *Rogers,* 154 id. 569; *Johnson* v. *Johnson,* 98 id. 564.

The language of item 3 is substantially the same as that of paragraph 3 of the will in *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, which was as follows:

*"Third*—After the death of my said wife all of said property and estate above mentioned and described to go to my children, share and share alike, and shall any of my children die, then the children of such deceased child, should any children be surviving such deceased child, to take the share of the parent so deceased; and should any of my children die leaving no issue, then the share of such

316—30

deceased child shall be divided equally among my surviving children."

There was, however, the distinction between that case and this, that in the former the devise to the children was preceded by a particular estate to the testator's widow for her life. In such case the rule is that the estate dependent on the death of the previous taker will take effect if the contingency happens at any time during the continuance of the particular estate. In such case death without issue means death before the death of the life tenant unless the will shows that the testator intended to refer to a later date than the termination of the life estate. This rule was followed also in *Sheley* v. *Sheley*, 272 Ill. 95, and *Welch* v. *Crowe*, 278 id. 244, and was more fully explained in *Fulwiler* v. *McClun*, 285 Ill. 174, and *Morris* v. *Phillips*, 287 id. 633, in the former of which the rule of construction given in 30 Am. & Eng. Ency. of Law, (2d ed.) 709, was referred to as the correct rule. The general rule of construction in gifts over after a devise upon the death of the prior devisee, whether the original devise is direct and immediate or is postponed as to vesting in possession until the termination of a particular estate, is, that words referring to the death of the prior devisee in connection with circumstances which may or may not happen refer to death either before or after the death of the testator, and the gift over takes effect upon death under the circumstances indicated whether before or after the death of the testator, but if the prior devise subject to the devise over is preceded by a particular estate and there is nothing in the will indicating a different intention, the executory devise will take effect in case of the death of the prior devisee before the termination of the particular estate. The estate devised to the first taker is not reduced to a life estate in this case because the contingencies upon which the prior estate will be defeated do not exhaust all the possibilities. These contingencies are, death without children and death leaving children, whether before or after the death of

the testator and before the expiration of the particular estate, either of which will defeat the prior estate; but there is the further contingency of death after the expiration of the life estate, which would not affect the prior estate in fee but leave it in full force. The rules which have been mentioned are, however, rules of construction, only, and not of law, and yield to any language of the testator showing a different intention. In this case, however, there is no context indicating a different intention, and the will must have the effect indicated by its language, construed according to the ordinary rules of interpretation.

While the language of item 2 is sufficient to devise a fee simple, the intention of the testator is not to be ascertained from that item alone, but if from a consideration of the whole will the intention expressed is that the estate should be less than the fee simple, it is wholly immaterial in what part of the will such intention is manifested. (*Giles* v. *Anslow,* 128 Ill. 187; *Meins* v. *Meins,* 288 id. 463.) An estate in fee simple may be granted subject to a condition that it shall terminate on the happening of some future event. (*Glass* v. *Johnson,* 297 Ill. 149; *Williams* v. *Elliott,* 246 id. 548; *Gannon* v. *Peterson,* 193 id. 372; *Strain* v. *Sweeny,* 163 id. 603; *Summers* v. *Smith, supra.*) The language of the clause creating the limitation must be as clear as that of the clause creating the estate, and if it shows clearly an intention to impose a limitation upon the estate that intention will be given effect. (*Wiltfang* v. *Dirksen,* 295 Ill. 362.) The devise of a fee in item 2 of the will is inconsistent with the provisions of item 3 for gifts over which reduce the devise to a life estate, but the rule is well established, not only in Illinois but generally, that when clauses of a will are irreconcilable and the repugnancy is invincible the later clause will usually prevail. (*Brownfield* v. *Wilson,* 78 Ill. 467; *Rountree* v. *Talbot,* 89 id. 246; *Murfitt* v. *Jessop,* 94 id. 158; *Dickison* v. *Dickison,* 138 id. 541.) Every clause and provision, if possible,

should be given effect according to the testator's intention, but where a later clause in a will is so repugnant to an earlier that reconciliation is impossible, the later clause is considered as intended to modify or abrogate the earlier. (*Hamlin* v. *United States Express Co.* 107 Ill. 443; 3 Jarman on Wills,—5th Am. ed.—705, rule 7; 1 Redfield on Wills, 443.) This rule is not derived from or dependent on section 13 of our statute on conveyances, which provides that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." It was a rule of the common law, stated by Blackstone in his Commentaries (vol. 2, p. 381) : "That, in a deed, if there be two clauses so totally repugnant to each other, that they cannot stand together, the first shall be received, and the latter rejected; wherein it differs from a will, for there, of two such repugnant clauses the latter shall stand. Which is owing to the different natures of the two instruments, for the first deed and the last will are always most available in law. Yet in both cases we should rather attempt to reconcile them." He cites Coke on Littleton, 112, and in the American notes it is said: "Such was held to be the law in the time of Lord Coke.—See accordingly 6 Ves. 102; 5 Ves. 247, 407." So in Redfield on Wills (vol. 1, 443,) it is stated that where there is no fair and reasonable mode of reconciliation the latest of the contradictory provisions shall prevail. The author cites in a footnote: "Co. Litt. 112b. Also that in a will where there be diverse devises of the one thing, the last devise taketh place. *Cum duo inter se pugnantia reperiuntur in testamento, ultimum ratum est.*"

Words of inheritance were not, before the enactment of section 13 above referred to, necessary in a will to trans-

fer an estate of inheritance, but any words in a will which fairly indicated the intention to devise a fee simple were sufficient to transfer such an estate. In interpreting wills the law authorizes the consideration of the whole will and the determination of the intention of the testator from a consideration of all the language he has used, in whatever portion of the will it may be found. It was not the intention of the statute to establish a rule of construction which would prevent the consideration of all the language in the will, and its only effect, as far as wills are concerned, was to make every devise of an interest in lands a devise of a fee simple estate of inheritance unless otherwise limited by express words or appearing to be devised by construction or operation of law.

The bill alleged and the demurrer admits that there is no provision of the laws of the State of Indiana providing for children or grandchildren in case a devisee should die in the lifetime of the testator, and that it is the common and usual practice in that State to place in wills provisions of the character of those in item 3 to guard against lapses; that the estate of the testator was administered in Jasper county, Indiana, and the personal estate was distributed equally among his children, as absolute owners under the provisions of his will, under the direction of the circuit court of that county, and that his real estate in Indiana was vested in fee simple in his children under the provisions of his will and the directions of the circuit court, and many circumstances are alleged showing his relations to the members of his family, but none of the things of this character which are alleged are of any effect in the interpretation of his will. A will of real estate, wherever made and in whatever language written, is construed according to the law of the jurisdiction in which the property is situated, and where a testator by a single will devises lands lying in two or more States, the courts of such States will, respectively, construe it as to the lands situated in them, respectively, in

the same manner as if they had been devised by separate wills. (*McCartney* v. *Osburn,* 118 Ill. 403.) As to his lands in this State, it is the duty of the courts of this State to construe his will according to the laws of this State. In construing a foreign will affecting real estate in Illinois the laws of Illinois govern in ascertaining the testator's intention as well as in determining the effect of the provisions of his will. The language of the will must be construed according to the rules of construction which prevail in the courts of this State, and where language is used having a definite meaning under such rules it must be given that meaning in the construction of the will. *Peet* v. *Peet,* 229 Ill. 341.

On the death of John Crabb the devisees named in his will became entitled to life estates in his Livingston county land with contingent remainders upon their death to their children who might survive them or to their surviving brothers and sisters. The reversion descended to the testator's children as his heirs. On February 2, 1918, after their father's death, they united in a deed conveying the premises to the appellee. The effect of the conveyance, under such circumstances, by the owners of the life estate, who were also owners of the reversion, has been held in many cases to be the destruction of the contingent remainders, so that the grantee in such a deed became the owner of the premises in fee. (*Bond* v. *Moore,* 236 Ill. 576; *Belding* v. *Parsons,* 258 id. 422; *Messer* v. *Baldwin,* 262 id. 48; *Benson* v. *Tanner,* 276 id. 594; *Lewin* v. *Bell,* 285 id. 227.) The General Assembly in 1921 enacted that no future interests shall fail or be defeated by the termination of any precedent estate or interest prior to the happening of the event or contingency on which the future interest is limited to take effect. (Laws of 1921, p. 470.) But the conveyance of the heirs of Crabb was executed before that act went into effect. The act was not retroactive and did not apply to cases where conveyances which would have the effect

of destroying future interests were executed before the act went into effect. (*Edmiston* v. *Donovan*, 300 Ill. 521.) The conveyance of the heirs of Crabb to the appellee being made before that act was passed was not affected by it and vested appellee with the fee simple title to the premises.

The decree of the circuit court was therefore right, and it will be affirmed.                              *Decree affirmed.*

Mr. JUSTICE FARMER, specially concurring:

Inasmuch as I agree that the decree of the circuit court in this case should be affirmed but cannot agree to the construction given the will of John Crabb, I have thought there would be no impropriety in my giving brief expression to my views upon that question.

It seems to me the court has construed the will in this case contrary to the plain intention of the testator. If he intended to give his children living at the time of his death a fee simple absolute estate but in order to guard against lapses in case any of them predeceased him he made further provision by paragraph 3, no rule of law or of public policy would be violated by giving effect to the intention of the testator. The question is one of intention of the testator, and that ought not to be obscured by courts by technical refinements of arguments which are much less easily understood than the plain language of the will. As I see it, there is no occasion for "darkening counsel by words." This and all other courts and text writers agree that in construing a will the intention of the testator, when not contrary to public policy or to law, should be given effect. We have many times said that is the cardinal rule in will construction; that all other rules must yield to it; that the intention of the testator is the polar star by which courts are to be guided in construing wills; and we have often held that as an aid in determining what the testator intended by the language used in his will, courts may consider the circumstances surrounding the testator at the time he made the

will, the condition of his property, his family, his relations with them, and the language of the will should be interpreted from the standpoint of the testator at the time he employed it. We have held the state of the law at the time the will was made may be considered, and often affords material assistance in arriving at the testator's intention when such intention might otherwise be doubtful. *Carpenter* v. *Browning,* 98 Ill. 282.

*Fifer* v. *Allen,* 228 Ill. 507, construed the will considered in that case as referring to the death of the first devisee at any time, whether before or after the death of the testator. If that was what the testator intended,—and the court held it was, from the language used in the will,—the construction given it was correct.

In *Kohtz* v. *Eldred,* 208 Ill. 60, the devise was of real and personal estate in trust for the testator's children, to be equally divided between them, share and share alike. If either of them died leaving no issue surviving, then the share of the deceased child was to go to the survivor, and if both the testator's children died leaving no issue surviving, then to go to others mentioned. The court held the devise to the first devisee was of an equitable fee, and that the estate was not cut down by the provision made in case of their death; that the death referred to meant death during the life of the testator. The court cited Jarman on Wills and decisions of courts of many States, among them *Wright* v. *Charley,* 129 Ind. 257, 28 N. E. 706, from which case the court quoted the following: "It is the well settled doctrine that the courts of this country will so construe a will, when not inconsistent with the intention of the testator, as to prevent the title to real estate from remaining contingent, and, unless there are plain indications of a contrary intent, will consider the entire title as vested in those claiming under the will, rather than in abeyance. (*Wills* v. *Wills,* (Ky.) 3 S. W. Rep. 900; *Heilman* v. *Heilman,* 28 N. E. Rep. 310.) In accord with this rule it is said by Mr. Jar-

man to be an established rule that where a bequest is simply to one person and in case of his death to another, the primary devisee surviving the testator takes absolutely. This rule applies to both personal and real estate, and the authorities in this country uniformly sustain the construction that in a devise or bequest *simpliciter* to one person and in case of his death to another, the words refer to a death in the lifetime of the testator. (2 Jarman on Wills, 752.) This rule is fully sustained by the authorities. (*Moore* v. *Lyons,* 25 Wend. 119; *Kelly* v. *Kelly,* 61 N. Y. 47; *Briggs* v. *Shaw,* 9 Allen, 516; *Whitney* v. *Whitney,* 45 N. H. 311; *Vanderzee* v. *Haswell,* (N. Y. App.) 8 N. E. Rep. 247; *Reams* v. *Spann,* (S. C.) 2 S. E. Rep. 412; *Wills* v. *Wills,* (Ky.) 3 S. W. Rep. 900; *Hoover* v. *Hoover,* 116 Ind. 498; 19 N. E. Rep. 468; *Harris* v. *Carpenter,* 109 Ind. 540; 10 N. E. Rep. 422.) So, too, another well established rule is, that where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death without issue, the words refer to a death without issue during the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple.—*Clayton* v. *Lowe,* 5 Barn. & Ald. 636; *Gee* v. *Mayor, etc. of Manchester,* 17 Adol. & E. (N. S.) 735; *Woodburne* v. *Woodburne,* 23 L. J. Ch. 336; *Doe* v. *Sparrow,* 13 East, 359; *Quackenbos* v. *Kingsland,* (N. Y. App.) 6 N. E. Rep. 121; *Livingston* v. *Greene,* 52 N. Y. 118; *Embury* v. *Sheldon,* 68 id. 227; *Michley's Appeal,* 92 Pa. St. 514; *Heilman* v. *Heilman,* 28 N. E. Rep. 310."

In *Fifer* v. *Allen, supra,* the court said it was beyond question that the will was correctly construed in *Kohtz* v. *Eldred.* In the *Kohtz case* the entire will is set out and the decision is based upon the construction of its language, unaided by any extraneous circumstances or context. The case of *Wright* v. *Charley, supra,* was decided by the Supreme Court of Indiana in 1891. The same court in 1896 decided

*Fowler* v. *Duhme,* 42 N. E. 623, in which case the testator devised lands to his children, with a provision that if any of them died without lawful issue living, then the share of such deceased child should become the property of the survivor. The court held death of the child without issue meant death during the life of the testator, and cited and quoted with approval *Wright* v. *Charley.* Those cases were approved and followed by the Supreme Court of Indiana in 1924 in *Quilliam* v. *Union Trust Co.* 142 N. E. 214.

It seems to me the language of the will in this case does not justify the construction given it by the court. There can be no question that paragraph 2 of the will was sufficient to devise a fee to the testator's children, for he says they are to have his estate in fee simple absolute, in equal proportions. In *Becker* v. *Becker,* 206 Ill. 53, this court held it is the settled policy to adopt the construction of a will giving an estate of inheritance to the first devisee unless limiting or qualifying clauses show clearly and unequivocally that it was the intention of the testator to limit or qualify the estate granted. In doubtful cases the law favors that construction of a will which gives the first taker a fee simple estate, especially if he is an heir. (*Bookless* v. *Charnoch,* 307 Ill. 578; *Tucker* v. *Tucker,* 308 id. 371; *Romer* v. *Romer,* 300 id. 335; *Tomlin* v. *Laws,* 301 id. 616.) In the last case cited the court said it was a settled rule of construction of wills that when an estate is devised to one person and in case of his death to another, death refers to death during the lifetime of the testator, in the absence of other words of the will showing a different intention,—citing *Carpenter* v. *Sangamon Loan and Trust Co.* 229 Ill. 486, and *Kolb* v. *Landes,* 277 id. 440.

There is no pretense that any rule of law or of public policy would be violated if the testator intended in the will here under consideration that his children living at the time of his death should take a fee simple absolute, but if any of them predeceased him, paragraph 3 was executed to guard

against lapses. To my mind the testator's intention as expressed by his will is not doubtful. But conceding for the sake of argument that it is, then the rule we have referred to favors the construction which gives the first takers a fee simple. There is certainly no language in the will which manifests a clear and unequivocal intention of the testator to limit the estate granted to the first takers to less than a fee simple. Furthermore, any doubt whether the language of the will referred to the death of the first taker before the death of the testator is dissipated when we consider the circumstances of the testator, his family, his property, the law of the State in which he lived, where most of his property was situated, where most of his children resided at the time the will was executed and at the time of the testator's death. The personal estate of the testator was given testator's children by the same clause giving them his real estate, which itself indicates the intention to devise a fee in testator's lands. (*Hempstead* v. *Hempstead,* 285 Ill. 448.) It was not his intention to confer one kind of an estate in his personal property and another kind in his land. Under the law of Indiana the death of the first taker referred to in the will meant death before the death of the testator, and he was presumed to know the law of the State of his residence and where most of his property was situated. No one would contend it was the intention of the testator to give his children one estate in the property in Indiana and a different estate in his property in Illinois. It cannot be disputed that he intended to give them the same estate in all of his property, wherever situated. The law of Indiana is, of course, not controlling in the construction of wills and the settlement of titles to land in this State, but it may be looked to to determine what the testator intended. If he had used language which this court had construed contrary to the construction of the same language by the Supreme Court of Indiana the decision of that court would not govern the decision in this State, but the Indiana courts,

as well as this court and all other courts, have said the cardinal rule in the construction of wills, to which all other rules must yield, is the intention of the testator, and if it was his intention to give his children a fee simple estate in all his property, wherever situated, if they survived him, no rule of construction established by the decisions in this State would be violated. To hold that such was the intention of the testator would not violate any rule of construction in this State. In construing wills courts have no inspired powers for determining the intention of the testator but must decide what the testator meant from the language he employed, considered in connection with all the surrounding circumstances, which all courts hold are proper to consider in arriving at what the testator intended by his will.

The bill in this case alleges, and the demurrer admits, that the courts of Indiana have vested the property devised in that State, real and personal, in the children of the testator in fee simple absolute. That was done because the courts of that State held such was the intention of the testator. This court holds the language of the will clearly and unequivocally shows such was not the intention of the testator, the effect of which is that the testator intended his children should take an estate in fee simple absolute in the property in Indiana and only a qualified or determinable fee in the property in Illinois. Of course, the testator had no such intention, and this court is not obliged by any of its own decisions to hold that he had. There are no equities in this case which would, in any event, require any such a construction. Defendant stated in open court he was willing and anxious to perform the contract if complainant had a good title, and he reiterates that statement in his brief in this court.

I think complainant's title good without reference to the question of merger, and that the decree should have been affirmed upon the ground that testator's children took a fee simple title under the will.